**In the Matter of Dean S. HAZEL, Debtor.**

**Bankruptcy No. 86–02878–G.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Dec. 19, 1986.

Betty A. Ortner, Detroit, Mich., for debtor.

Roy C. Hayes, U.S. Atty., Detroit, Mich., Mark E. Rizik, Special Asst. U.S. Atty., Office of the District Counsel, Internal Revenue Service, Detroit, Mich., for the United States.

## AMENDED MEMORANDUM AND ORDER DENYING PLAN OF CONFIRMATION

RAY REYNOLDS GRAVES, Bankruptcy Judge.

Debtor is a self-styled "Tax Protester".[1] He failed to file federal income tax returns for the years 1978 through 1985. In one of those years, 1979, the debtor instead filed an altered Form 1040 on which he deducted all of his wages under the heading of "NON–TAXABLE RECEIPTS—*EISNER V. MACOMBER*."[2] As a result of the debtor's deduction of all of his wages, his reported return showed that he had no tax liability for 1979. At a hearing in open court, the debtor testified that he failed to file returns and filed a false Form 1040 for 1979 based upon his alleged belief that wages are not taxable since they are equally exchanged for his labor.[3]

The debtor commenced this Chapter 13 proceeding on June 16, 1986. The debtor, at that time acting *pro se*, also filed his

---

1. Briefly, a Tax Protester generally is a person that questions or challenges the constitutionality of income or other taxes and refuses to pay based upon that belief. See generally, *Weston v. Commissioner*, 775 F.2d 147 (6th Cir.1985); *England v. Commissioner*, 798 F.2d 350 (9th Cir. 1986); and *Coleman v. Commissioner*, 791 F.2d 68 (7th Cir.1986).

2. Referring to *Eisner v. Macomber*, 252 U.S. 189, 40 S.Ct. 189, 64 L.Ed. 521 (1920). The court in *Eisner* held that Congress was not empowered by the Sixteenth Amendment to tax, as income a stock dividend of a stockholder without apportionment. See also *Towne v. Eisner*, 245 U.S. 418, 38 S.Ct. 158, 62 L.Ed. 372.

*Eisner* is frequently cited by tax protesters as authority for the general challenge to the payment of income taxes. However, *Eisner* concerns itself with stock dividends as income. It gives no authority to directly or indirectly challenge the constitutionality of income taxes. See 9 A.L.R. 1570.

3. This is a common argument in such cases. See generally, *Taylor v. Commissioner*, 771 F.2d 478 (11th Cir.1985), *Cameron v. Commissioner*, 773 F.2d 126 (7th Cir.1985); *Charczuk v. Commissioner*, 771 F.2d 471 (10th Cir.1985); *United States v. Bressler*, 772 F.2d 287 (7th Cir.1985); *Mathes v. Commissioner*, 788 F.2d 33 (D.C.Cir. 1986).

Chapter 13 plan and schedules on June 16, 1986. Although the debtor's Chapter 13 plan did not state its duration, it did state that the debtor was to pay the trustee $99.00 per month with $10.00 per month going to general unsecured creditors. This proposal represented less than one percent (1%) repayment of general unsecured creditors.

The United States of America, through its agency, the Internal Revenue Service, filed a proof of claim in the amount of $36,043.02. The United States also filed an objection to confirmation of the debtor's Chapter 13 plan stating that, among other things, the debtor's plan was not proposed in "good faith" as required by § 1325(a)(3) of the Bankruptcy Code.

The debtor filed an objection to the proof of claim of the Internal Revenue Service. He did not object to the amount of the claim, but rather to the classification of the tax liabilities as secured priority claims rather than general unsecured claims.

At a hearing held on October 29, 1986, the parties orally represented to the Court that the debtor's objection to the claim of the Internal Revenue Service had been resolved such that approximately $32,000.00 of the Internal Revenue Service's claim would be classified as a general unsecured claim, with the remainder being classified as a § 507(a)(7) priority claim. The parties also represented that all matters had been disposed of except for the United States' objection to the debtor's plan as not being proposed in "good faith". At a hearing, the parties presented oral testimony, a written stipulation of facts, exhibits, and other documentary evidence in support of their relative positions.

The issue that we are asked to resolve is whether the deliberate failure to pay federal income tax is "bad faith" pursuant to 11 U.S.C. § 1325(a)(3) where the debtor refuses to pay taxes and subsequently seeks to discharge the tax claim in bankruptcy and where a denial of confirmation is sought based upon the alleged bad faith?

Our discussion will be limited to the nonpayment of tax as it relates to bad faith under § 1325(a)(3).

### Bad Faith Under § 1325(a)(3)

Pursuant to § 1325(a)(3) of the Bankruptcy Code, the Court shall confirm a plan if "the plan has been proposed in good faith and not by any means forbidden by law." Congress has never defined the term "good faith" in either the Bankruptcy Act or the Bankruptcy Code. In addition, the legislative history accompanying the Act and Code does not help to clarify the meaning of the term "good faith." See H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 412, 430 (1977); S.Rep. No. 95–989, 95th Cong.2d Sess. 126, 142 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5912, 5928; and *Matter of Esser*, 22 B.R. 814 (Bankr.E.D.Mich.1982).[4] Courts have been left with the task of providing substance to the words: "good faith".

In *Matter of Estus*, 695 F.2d 311 (8th Cir.1982), the United States was the holder of an unsecured claim based upon an educational loan. The government moved to deny confirmation based upon § 1325(a)(3) stating that the plan allowed no payment to unsecured creditors. On the subject of good faith, the court noted the need to consider all of the relevant circumstances in each case:

[I]n determining whether a debtor's plan meets the § 1325(a)(3) requirement of good faith, we believe the proper inquiry should ... [be] whether the plan constitutes an abuse of the provisions, purpose, or spirit of Chapter 13. The Bank-

---

**4.** For discussions on this subject see Organ, *"Good Faith" and the Discharge of Educational Loans in Chapter 13: Forging a Judicial Consensus,* 38 Vand.L.Rev. 1087 (1985); Cyr, *The Chapter 13 "Good Faith" Tempest: An Analysis and Proposal for Change,* 55 Am.Bankr.L.J. 271 (1981); Peeples, *Five into Thirteen: Lien Avoidance in Chapter 13,* 61 N.C.L. 849 (1983); Note, *"Good Faith" and Chapter 13 Composition Plans: Analysis and Proposal,* 65 Minn.L.Rev. 659 (1981); Note, *Abusing Chapter 13 of the Bankruptcy Code: The Problem of Nonpayment,* 55 N.Y.U.L.Rev. 1941 (1980); Note, *Good Faith* in Chapter 14: *A New Wild Card for Bankruptcy,* 8 Ohio, N.U.L.Rev. 102 (1981).

ruptcy Court must utilize its fact finding experience and judge each case on its own factors after considering all of the circumstances of the case. If, after weighing all of the facts and circumstances, the plan is determined to constitute an abuse of the provisions, purpose of spirit of Chapter 13, confirmation must be denied.

*Estus,* at 316

■ Next, the court noted that several factors should be considered in the determination of good faith. These factors were found to be meaningful in addition to the amount of payment to the unsecured claimants:

1. The amount of the proposed payments and the amount of the debtor's surplus;

2. The debtor's employment history, ability to earn and likelihood of future increases in income;

3. The probable or expected duration of the plan;

4. The accuracy of the plan's statements of the unsecured debt and whether any inaccuracies are an attempt to mislead the court;

5. The extent of preferential treatment between classes of creditors;

6. The extent to which secured claims are modified;

7. The type of debt sought to be discharged and whether any such debt is non-dischargeable in Chapter 7;

8. The existence of special circumstances such as inordinate medical expenses;

9. The frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10. The motivation and sincerity of the debtor in seeking Chapter 13 relief; and

11. The burden which the plan's administration would place upon the trustee.

*Estus* at 317. Currently, under the Bankruptcy Code as amended in 1984, the amount of the debtor's payments is no longer a significant consideration of good faith. See L. King, 5 *Collier on Bankruptcy,* ¶ 1325.04[3] (15th Ed. 1985); and *In re Red,* 60 B.R. 113, 14 C.B.C.2d 696 (Bankr.Tenn.1986).

### Debtor's Plan Fails the "Good Faith" Test

■ The debtor's Chapter 13 plan abuses both the spirit and purpose of Chapter 13. Through his plan, the debtor seeks a discharge of federal tax liabilities which he never reported and which he never intended to pay.[5] Moreover, we find no persuasion in debtor's challenge to the claim as a tax protestor. It is well-settled that these challenges are without merit. See *United States v. May,* 555 F.Supp. 1008 (E.D.Mich. 1983); *Beard v. Commissioner,* 82 T.C. 766 (1984), *aff'd,* 793 F.2d 139 (6th Cir.1986) and *Perkins v. Commissioner,* 46 T.C. Memo 1046, *aff'd,* 746 F.2d 1187 (6th Cir. 1984).[6]

In 1979 and 1980, the debtor filed with his employer false W–4 Forms which are Employees Withholding Allowance Certificates, on which he claimed that he was exempt from the withholding taxes on his wages. At a hearing, the debtor testified that at the time he filed those false W–4 Forms, he was aware that the effect of claiming "exempt" on those forms was that taxes and wages would not be withheld. In 1982, the debtor was convicted of filing false W–4 Forms with his employer in violation of 26 U.S.C. § 7205.[7] Despite the conviction, debtor continued to file W–4 Forms in the same manner.

---

**5.** It is interesting to note that the debtor has abandoned his tax protester status and now seeks to acknowledge the tax liability seeking to discharge it in bankruptcy.

**6.** In *United States v. May,* 555 F.Supp. 1008 (E.D.Mich.1983) the defendant was enjoined

from the same practices engaged in by the debtor.

**7.** *United States v. Hazel,* 696 F.2d 473 (6th Cir. 1983).

The failure to file federal income tax returns, or the filing of invalid federal income tax returns, when coupled with the filing of false W–4 Forms, has been held to constitute fraud. *Rowlee v. Commissioner,* 80 T.C. 1111 (1983); and *Habersham-Bey v. Commissioner,* 78 T.C. 304 (1982). Additionally, the debtor's refusal to cooperate with the Internal Revenue Service during the audits of his 1978, 1979 and 1983 taxable years, thereby forcing the Internal Revenue Service to resort to third-party sources for information concerning the debtor's tax liabilities for those years, is evidence of fraud. See *Grosshandler v. Commissioner,* 75 T.C. 1 (1980); *Stoltzfus v. United States,* 398 F.2d 1002 (3d Cir. 1968); and *Wagner v. Commissioner,* 48 T.C. Memo 43 (1984). In essence, the debtor willfully failed to report any tax liabilities, purposefully prevented the collection of any taxes by the Internal Revenue Service, and ultimately filed a Chapter 13 petition in an attempt to have those unreported, unpaid liabilities discharged.

Debtor's plan thus cannot be confirmed. To do so would lend assistance to those who seek to avoid the payment of taxes. This Court cannot use its constitutionally given authority to frustrate Congress, the Constitution itself and the laws of the United States.[8] Moreover, the record indicates that debtor's intention in filing the bankruptcy petition was to discharge the tax claims created by his own actions. To file a petition in bankruptcy in order to discharge a debt arising from illegal activity is clearly bad faith.[9] We hold then that it is bad faith pursuant to 11 U.S.C. § 1325(a)(3) to file a petition in bankruptcy and seek confirmation of a plan that discharges tax claims arising from the debtor's unlawful refusal to pay those taxes. It does not matter that the debtor may have other legitimate debts. The presence of these debts will not allow a plan filed in bad faith to be confirmed. The element

giving rise to bad faith is a bar to confirmation.

Confirmation of debtor's plan is therefore DENIED and the petition in bankruptcy is DISMISSED.

---

**8.** The authority to impose income tax and to discharge debts in bankruptcy are both derived from the United States Constitution. See U.S. Const.Am. XVI; U.S. Const. Art. 1, § 8, cl. 4.

**9.** The debtor additionally overlooked 11 U.S.C. § 523(a)(1)(B)(i) which would deny discharge under § 1328(b) for the tax claims arising from the failure to file tax returns.