In re John W. ZARLING a/k/a John William Zarling a/k/a John A. Zarling, Debtor.

John D. STEIN, Trustee, Plaintiff,

v.

John W. ZARLING, Universal Life Church, Universal Life Church, Inc., Bishop Edward Tabeau, Dr. Darwin Hempton, Donald Minniecheski, Al C. Fischer, Audrey J. Zarling, and James Zarling, Defendants.

Bankruptcy No. 84–00616.
Adv. No. 85–0198.

United States Bankruptcy Court,
E.D. Wisconsin.

Feb. 20, 1987.

Gaar W. Steiner, Milwaukee, Wisc., for Patricia A. Butt, Aux. Bishop Universal Life Church, Inc., John W. Zarling, Universal Life Church, Universal Life Church, Inc., Bishop Edward Tabeau, Dr. Darwin Hempton, Donald Minniecheski, Al C. Fischer, Audrey J. Zarling and James Zarling.

Paul S. Medved, Milwaukee, Wis., for Trustee.

John D. Stein, Neenah, Wis., Trustee.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

This action, commenced by John D. Stein, Chapter 7 trustee ("trustee"), seeks a turnover [1] of the debtor's undivided one-half interest [2] in an 80 acre farm located at 6479 West Waukau Avenue, Oshkosh, Wisconsin. Defendant, John W. Zarling ("debtor"), appears *pro se*. The trustee has joined other parties as defendants because of their possible interests in the farm. Trial was commenced on November 20, 1986 and concluded on January 22, 1987. The

---

1. Although the trustee's complaint is designated as "Complaint to Compel Turnover of Property," the relief really being sought is to sell the property in question pursuant to § 363(h) of the Bankruptcy Code.

2. The debtor's wife, defendant Audrey J. Zarling, owned the other undivided one-half interest in the farm at the time of the December 14, 1979 conveyance referred to hereafter in this decision. Because Mrs. Zarling did not join in the voluntary petition in bankruptcy with the debtor, the court is only concerned with the debtor's interest in this particular property.

parties filed a joint final pretrial report containing an agreed statement of uncontested facts and an agreed statement of contested facts. In the agreed statement of uncontested facts, all of the named defendants (with the exception of the Waukau congregation of Oshkosh, Wisconsin, which is denominated in the caption of this action as "Universal Life Church")[3] have disclaimed any interest in the farm.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(E). The relief requested by the trustee is dependent upon a threshold finding that the farm, or some interest therein, constitutes property of the debtor's estate.

The debtor filed a voluntary petition in bankruptcy on February 21, 1984. He did not list the farm on his schedules because he claimed it was no longer his property as of that date. He had purchased the farm in or about 1961.

On December 14, 1979, the debtor and Audrey J. Zarling jointly conveyed by quit claim deed their joint interest in the farm to a grantee designated as "Universal Life Church Charter No. 22406." The deed was recorded on February 19, 1980 with the Winnebago County Register of Deeds as Document No. 546394. After this conveyance, the debtor and his family continued to reside on this farm, operate the farm and pay the real estate taxes. On December 1, 1979, two weeks before this conveyance, Universal Life Church, Inc., a separate corporation headquartered at 601 Third Street, Modesto, California ("ULC–Modesto"), issued Charter No. 22406 certifying the Waukau congregation located at 6479 West Waukau Avenue, Oshkosh, Wisconsin, as a congregation of the Universal Life Church, Inc.. Hereafter, the terms "ULC–22406" and "the Waukau congregation," wherever used, are interchangeable, and they shall at all times refer to each other. Simultaneously, ULC–Modesto designated the debtor as pastor of ULC–22406.

A certificate dated March 4, 1985 was filed on April 22, 1985 with the Winnebago County Register of Deeds. The certificate acknowledged that the Waukau congregation was incorporated "for religious, charitable and educational purposes, which society shall be known and incorporated by the name of Universal Life Church."

The record does not reveal what the fair market value of the farm was as of the December 14, 1979 conveyance. The record, however, is clear that a financial statement, submitted by the debtor on September 6, 1983 to the Winnebago County Bank, a secured creditor (holding collateral in the debtor's farm machinery and equipment) represented the farm at that time as having a fair market value of $369,000. There was testimony that, after the December 14, 1979 conveyance, the only improvement to the real estate was a building which was constructed at a cost "not exceeding $20,000." At the time of the conveyance, the farm was unencumbered.

It is the trustee's contention that the debtor's interest in the farm constitutes property of the estate and that the December 14, 1979 conveyance to ULC–22406 is void and should be set aside in so far as the debtor's interest is involved. The debtor and the Waukau congregation dispute that claim.

### STATUS OF ULC–22406 AS OF DECEMBER 14, 1979

When the quit claim deed was executed on December 14, 1979, the grantee was not legally incorporated under Chapter 187 of the Wisconsin Statutes, which governs the incorporation of religious societies. Wis. Stats. 187.01(2) requires, in part, that a certificate acknowledging the existence of the religious society as a corporation must be filed with the Register of Deeds of the proper county[4] and specifically recites:

> "ULC–22406," and the Universal Life Church, Inc. of Modesto, California, as "ULC–Modesto."

**3.** Another entity known as "Universal Life Church, Inc." of Modesto, California, is also referred to in this decision. In order to avoid confusion, the Waukau congregation has been identified as either "Waukau congregation" or

**4.** Presumably under Wis.Stats. 187.09, the "proper" county is where the congregation is

"When such certificate shall have been so recorded the society named therein shall be a corporation and shall possess the powers and privileges granted to corporations by Chapter 181...."

Furthermore, Wis.Stats. 187.09 provides, in part, as follows:

"Every religious, or religious educational and charitable society organized ... by filing, or filing and having recorded, a certificate of the election of trustees or a certificate of organization designating the name of the church or society with the Register of Deeds of the proper county ... shall be deemed to be legally incorporated and shall have all the powers and be subject to all the liabilities of religious corporations under the provisions of this chapter."

■ Until such a certificate is filed with the Register of Deeds of the proper county, the entity referred to in the certificate is without authority to act. In this case, the certificate was not recorded until April 22, 1985, more than five years after the quit claim deed had been executed. Therefore, the quit claim deed was conveyed by the debtor to a non-existent entity at the time of the conveyance, notwithstanding self-serving statements on the certificate asserting the certificate to be "nunc pro tunc" and proclaiming "existing organizations legalized." Unlike the lyrics in an older and once popular song,[5] wishing will not make it so. The law does not operate in that manner. Wis.Stats. 187 sets forth the requirements for legalizing the existence of religious societies and provides that the filing of the certificate is a mandatory step to create corporate existence. Filing is more than a mere formality, and the transfer of property on December 14, 1979 was a nullity.

## FRAUDULENT CONVEYANCE

■ The Uniform Fraudulent Conveyance Act has been enacted by the State of Wisconsin and is embodied in Chapter 242 of the Wisconsin Statutes. It is a remedial statute and should be liberally construed in order to accomplish its purpose of giving speedy relief against a fraudulent debtor. *Running v. Widdes*, 52 Wis.2d 254, 259, 190 N.W.2d 169 (1971). When transfers constitute fraudulent conveyances under state fraudulent conveyance laws, they are subject to avoidance by the bankruptcy trustee under 11 U.S.C. § 544(b). *Collier Bankruptcy Practice Guide*, Fraudulent Conveyances § 65.04.

The evidence establishes that the requirements of Wis.Stats. 242.07, pertaining to actual fraud, have been met by clear and convincing evidence.[6] Under Wis.Stats. 242.07, a conveyance made with an actual intent to hinder, delay or defraud either present or future creditors is fraudulent and subject to avoidance. The debtor's actions evinced the necessary fraudulent intent by virtue of the following circumstances:

1. The lack of any consideration in connection with the December 14, 1979 conveyance. Inadequacy of consideration may be a badge of fraud and may be considered in relation to other facts to see if a conveyance was made to defraud creditors. *Waukesha County Department of Social Services v. Loper*, 53 Wis.2d 713, 193 N.W.2d 679 (1972).

2. The debtor's exclusive retention of all benefits and exclusive operation of the farm following the conveyance.

3. The debtor's continued retention of all income generated from the operation of the farm after the conveyance together with his lack of any accounting to ULC–22406 for income and ex-

located, in this case, Winnebago County, Wisconsin.

5. "Just Wishing" B.G. DeSylva, DeSylva, Brown, Henderson, Inc. (1939) which contains the following refrain: "Wishing will make it so, just keep on wishing and care will go."

6. Wis.Stats. 242.04 and 242.05 may provide the trustee with additional grounds for finding there was a fraudulent conveyance. Because the trustee's position has all the support that it needs in Wis.Stats. 242.07, these additional statutes have not been analyzed.

penses derived from the operation of the farm.

4. The lack of any written lease or other document defining the terms of possession by the debtor and his family upon the farm following the conveyance. The testimony indicates that, at most, the debtor agreed to pay the real estate taxes and maintain the farm by virtue of an alleged informal oral agreement.

5. The formation of ULC–22406 by the debtor approximately two weeks before the farm was conveyed on December 14, 1979.

6. The debtor's complete control of ULC–22406 up to the time of the filing of his bankruptcy petition. The entire slate of the original officers and trustees consisted of the debtor and his family. The trustees were: the debtor, his wife (Audrey J. Zarling), and his son, (James Zarling). The officers were: pastor (debtor), secretary (Audrey J. Zarling) and treasurer (James Zarling).[7]

7. Since the formation of ULC–22406, its only members have been the debtor and his family, consisting of his wife (Audrey J. Zarling) and three children (James Zarling, Michael Zarling and Linda Andresen).

8. ULC–22406 was created at a nominal cost of $25 (identified as a "church charter donation"), followed by the charter being issued by ULC–Modesto, an organization which has a history of providing similar charters to recipients for tax avoidance purposes. *Stewart L. Brown,* 51 T.C. Memo 1321 (1986), states:

"This court has had scores, if not hundreds, of cases revolving around the Universal Life Church Inc. of Modesto, California (ULC). These cases have made clear beyond question that ULC, functioning as a mail order ministry has granted 'charters' for local churches to individuals throughout the country, at the same time purporting to 'ordain' them as 'ministers' and conferring upon them 'degrees' of doctor of divinity. In one form or another, such individuals have claimed uniformly without success, that all or a substantial portion of their income from various secular activities is either nontaxable or subject to diminution by alleged charitable contributions either to ULC or to their local ULC 'church.' ULC has aided and abetted these claims by providing 'receipts' for the alleged contributions, and plainly has been at the center of such highly abusive tax scams." [8]

When viewed collectively, these circumstances present a clear pattern of fraud. Because direct proof of intent to defraud is seldom possible, it may be shown by the totality of the circumstantial evidence. *In re Cicero,* 28 B.R. 480 (Bankr.E.D.Wis. 1983); *In re Blatz,* 37 B.R. 401 (Bankr.E.D. Wis.1984); *In re Jones,* 68 B.R. 483 (Bankr. W.D.Mo.1984). The debtor's attempts to portray himself as an unsophisticated individual acting out of sincere religious convictions are unconvincing. To the contrary, the court concludes that the debtor is a very clever individual who embarked upon a carefully contrived scheme for his personal benefit and with the primary motive of circumventing payment of his existing and anticipated tax obligations.

Motivation is a question of fact to be determined on the basis of all the facts contained in the record. *Burger v. Commissioner of Internal Revenue,* 809 F.2d 355 (7th Cir.1987). The debtor acknowledged that, at about the same time the charter for ULC–22406 was obtained, he

---

**7.** In March of 1985 (after this bankruptcy case was filed), a change in trustees occurred. At that time, the debtor was deleted as a trustee, Al Fischer, Donald Minniecheski and Edward Tabeau were named as new trustees, and Audrey J. Zarling and James Zarling continued as trustees.

**8.** The Internal Revenue Service revoked the tax exempt status of ULC–Modesto on September 4, 1984 (Announcement 84–90, 1984–36 I.R.B. 32 [1984]).

was engaged in two separate high-risk financial ventures in which he expected to reap substantial profits during a relatively short period of time. He intended to use ULC–22406 as a convenient vehicle to deposit his anticipated profits and to then claim immunity from taxes on the ground that ULC–22406 was a tax exempt organization.

The debtor's tax returns and financial statements have a strong and damaging impact on the debtor's credibility in that they are replete with inaccuracies. For example, his 1979 income tax return contains no mention of the farm transfer to ULC–22406, either under the charitable contributions portion of the tax return or under Schedule D, which deals with capital gains and losses. The court concludes that the debtor's omission of any reference to the Universal Life Church in any of his tax returns was intentional. His purpose in so doing was to minimize the chances of a tax audit which might otherwise be triggered as a result of the numerous confrontations between ULC–Modesto and the Internal Revenue Service. *See, Stewart L. Brown, supra.*

In Schedule F of his 1979, 1980 and 1981 federal tax returns (dealing with farm income and expenses), the debtor reported amounts as farm income which, after subtraction of deductions, coincided exactly with claimed deductions so as to result in a zero net farm income. This was not sheer coincidence. The inference to be drawn presents the more likely explanation that some farm income during these periods was unreported. The debtor in fact admitted that he failed to report commissions received by him in connection with the sales of various securities. Those transactions are the subject of a separate state court lawsuit pending in Winnebago County, Wisconsin (*Robert F. Braun, et al v. Zarling, et al*, Winnebago County Circuit Court Case No. 83–CV–284). That suit involves allegations of false pretenses, false misrepresentations and fraud. The debtor's explanation that the unreported income was "minute" is unpersuasive.

Inconsistencies also appear in the debtor's financial statements. A September 6, 1983 financial statement that he submitted to the Winnebago County Bank listed "alcohol and distillation equipment" at a value of $125,000 and "household goods" at a value of $20,000. Shortly thereafter, on January 30, 1984, only two weeks before the debtor filed his voluntary petition in bankruptcy, another financial statement submitted by the debtor to the Winnebago County Bank, valued the same alcohol and distillation equipment at $10,000 and completely omitted the household goods. These drastic changes were never satisfactorily explained by the debtor. The portions of the debtor's financial statements dealing with contingent liabilities and labeled "litigation in process or threatened" were left blank, although at the times these financial statements were submitted, the debtor was involved in a pending State Court action in Winnebago County. The State Court action had already been scheduled for trial when the debtor's January 30, 1984 financial statement was prepared and submitted.

Based upon all of these factors, it is evident that fraud is pervasive in this case.

In *U.S. v. Jose, Inc., et al*, 81–1 USTC ¶ 86,945, a taxpayer conveyed three parcels of real estate to an entity titled "Research Universal Life Church Inc. Charter No. 24766." The United States government sought to foreclose tax liens for unpaid income and withholding taxes of the taxpayer against the three parcels of real estate which were conveyed. Utilizing Wis. Stats. 242.02, 242.04 and 242.06, the Honorable Terence T. Evans, United States District Judge for the Eastern District of Wisconsin, ruled that the facts established clear and convincing proof of a fraudulent conveyance and that the three parcels of real estate were subject to the federal tax liens.

*Loving Saviour Church v. U.S.*, 556 F.Supp. 688 (D.S.D.1983) held that the conveyance of a taxpayer's real and personal property to the Life Science Church was a fraudulent conveyance under South Da-

kota law. The court stated that the property was conveyed to the church solely as a means to avoid payment of federal income taxes and that it constituted a fraudulent conveyance.

## DISREGARDING SEPARATE EXISTENCE OF DEBTOR AND ULC–22406 ("ALTER EGO" DOCTRINE)

█ *Loving Saviour Church v. U.S., supra,* provides a separate basis for refusing to recognize a purported transfer of property—the "alter ego" doctrine. This doctrine is invoked when it has been shown that a corporation was created as a sham or a subterfuge for the purpose of carrying out an illegal scheme. Under such circumstances, the corporation's separate existence will be disregarded. Where justice and equity require, courts will "pierce the corporate veil" and treat both entities as one and the same.

Both federal and state courts in Wisconsin have applied the "alter ego" doctrine when appropriate. *Matter of Kaiser,* 791 F.2d 73, 75 (7th Cir.1986); *Quad/Graphics, Inc. v. Fass,* 548 F.Supp. 966, 969 (D.E.D. Wis.1982); *Milwaukee Toy Co. v. Industrial Commission of Wisconsin,* 203 Wis. 493, 495, 234 N.W. 748 (1931); *Sprecher v. Weston's Bar, Inc.,* 78 Wis.2d 26, 38, 253 N.W.2d 493 (1977); *Piercing the Nonprofit Corporate Veil,* 66 Marq.L.Rev. 134, 142 (1982). A prerequisite to the use of this doctrine, recognized by the foregoing cases, is that:

1. There is a unity of interest and ownership between the two entities, and
2. The observance of their separate existence would sanction a fraud or promote injustice.

The record in this case clearly establishes that ULC–22406 functions primarily, if not solely, as the alter ego of the debtor. The debtor and ULC–22406 do not really exist and operate apart from each other. The second element—that the observance of the separate existence of the debtor and ULC–22406 would sanction a fraud or injustice—has also been shown by the facts and circumstances set forth in that portion of this decision dealing with actual fraud on the part of the debtor.

This entire transaction is heavily tainted by fraud and will not be condoned by this court. In a recent case, *In re Hazel,* 68 B.R. 287, 15 B.C.D. 268 (Bankr.E.D.Mich. 1986), the court refused to confirm a Chapter 13 plan of a debtor who sought to discharge a tax claim arising from the debtor's willful failure to report his tax liabilities. That court, in declining to confirm the plan, stated, 68 B.R. 287, 15 B.C.D. at 270:

"To do so would lend assistance to those who seek to avoid the payment of taxes."

## SUMMARY

Upon the evidence presented, the court finds that the trustee's request for a turnover of the debtor's undivided one-half interest in the farm he conveyed is justified on any of three separate grounds. Pursuant to 11 U.S.C. § 544(b) of the Bankruptcy Code, the transfer by the debtor of his interest in the farm on December 14, 1979 will be avoided: (1) as a fraudulent conveyance under Wis.Stats. 242.07 by reason of actual intent to defraud, (2) under the separate but related "alter ego" doctrine and (3) because at the time of the purported transfer on December 14, 1979, the grantee was a non-existent entity.

The religious beliefs and doctrines of the parties to this litigation have no bearing upon the issues here presented and decided. The court's decision is based entirely upon the particular facts involved when considered in the light of applicable legal principles.

This decision shall stand as and for findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.