In re AMERICAN TELECOM
CORP., Debtor.

No. 03 B 46296.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 3, 2004.

Paul M. Heller, San Francisco, CA, Attorney for Movant.

Bert J. Zaczek, Chicago, IL, Attorney for Respondent.

## MEMORANDUM OPINION AND ORDER

JACQUELINE P. COX, Bankruptcy Judge.

Before the Court is Siemens Information and Communications Network, Inc.'s ("Siemens") "Revised Motion to Dismiss" the Chapter 7 case of American Telecom Corporation ("ATC") and its alternative "Request to Lift Stay" to permit the alter-ego action against the Chapter 7 debtor's two principals, Terry and Walter Glubisz, to proceed in the Circuit Court of Cook County.

### Background

The most important facts upon which this decision turns are not subject to reasonable dispute; only the legal significance of these facts under the applicable legal standards in 11 U.S.C. § 707(a) and § 362(d) is seriously disputed. Siemens obtained a judgment for $173,000 against ATC in the U.S. District Court for the Northern District of Georgia on August 10, 2000, while ATC's antitrust counterclaims against Siemens in the same lawsuit were dismissed. ATC and several other co-defendants appealed this judgment to the U.S. Court of Appeals for the 11th Circuit; ATC did not post an appeal bond to stay its enforcement. Consequently, during January 2001, Siemens began collection efforts by registering its foreign judgment in Illinois, where ATC is domiciled. By the time Siemens conducted its citation-to-discover-assets proceeding in 2002, the debtor ATC had not conducted any substantial operations since the end of 2001 and had virtually no assets from which Siemens could collect the judgment. Siemens initiated an additional Illinois collection suit against ATC's two shareholders/principals, the Glubisz brothers, in an effort to pierce ATC's corporate veil under state law. The state-court judge subsequently consolidated the two collection suits and eventually set the final trial date of the alter-ego suit for November 17, 2003. After the attorney for ATC and the Glubisz brothers made two unsuccessful motions to stay the collection effort until the appeal pending in the 11th Circuit was resolved, he filed this Chapter 7 bankruptcy case for ATC four days before the alter-ego trial. Relying on *Koch Refining v. Farmers Union Central Exchange*, 831 F.2d 1339 (7th Cir.1987), ATC asserted to the Illinois court that the alter-ego action against the Glubisz brothers is an asset of the bankruptcy estate that could only be brought by the Chapter 7 case trustee. The state-court judge obliged its request to stay the alter-ego trial regardless of whether the automatic stay of § 362(a) applied to the same, giving deference to this Court's interpretation of the automatic stay provisions.

ATC originally filed this case listing Siemens as its only creditor. Later it asserted that Berry & Leftwich, the law firm

representing it in the appeal in the 11th Circuit, would have a contingent claim within the meaning of 11 U.S.C. § 101(5) as a result its contingency contract with this firm; it also amended its schedules to reflect the claims of ATC's two insiders, the Glubisz brothers, for accrued and unpaid rent and salary obligations. The Glubisz brothers scheduled themselves as having claims of $170,250 and $115,500 with priority over Siemens' general unsecured claim, listing the two debts as salary and wage claims from 2001 and 2002 even though each brother would be limited under 11 U.S.C. § 507(a)(3) to a priority claim of $4,650 earned only during the 90 days before the date ATC ceased operations. Factual controversies such as whether the Glubisz brothers owe ATC a net amount for various corporate loans or whether the converse is true do not require resolution in order to rule on the immediate Bankruptcy Code issues.

The trustee for this Chapter 7 case has not taken any position in this dispute at this point.

### Discussion of the Legal Standard Governing Dismissal under § 707(a)

■■■ Chapter 7 of the Bankruptcy Code, just like Chapters 11 and 13, contains a dismissal provision listing non-exclusive grounds constituting "cause" for dismissal. In all three chapters, the concept of "cause" has been interpreted to include a lack of good faith in filing the bankruptcy petition or, as other courts prefer to describe it, *see, e.g., Huckfeldt v. Huckfeldt (In re Huckfeldt)*, 39 F.3d 829, 832 (8th Cir.1994); *In re Horan*, 304 B.R. 42, 45, 2004 WL 111799, at *2 (Bankr. D.Conn.2004), a failure to present a bankruptcy case implicating any of the policies underlying the chapter in which the debtor seeks protection. *See In re Ripley & Hill, P.A.*, 176 B.R. 596, 598 (Bankr.M.D.Fla.

1994); *In re Collins*, 250 B.R. 645, 653 (Bankr.N.D.Ill.2000); *In re Carbaugh*, 299 B.R. 395, 398 (Bankr.N.D.Tex.2003); *see also Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir.1994) (Chapter 11 case); *In re N.R. Guaranteed Retirement*, 112 B.R. 263, 270–71, 279 (Bankr.N.D.Ill. 1990) (same) (quoting *In re Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir. 1984)), *affirmed*, 119 B.R. 149 (N.D.Ill. 1990); *Matter of Love*, 957 F.2d 1350, 1354 (7th Cir.1992) (same for Chapter 13 case); *cf. Matter of Little Creek Development Co.*, 779 F.2d 1068, 1071–72 (5th Cir.1986) (general discussion of bad-faith filings in context of motion to modify the stay for "cause"). The Court must look at the totality of the circumstances surrounding both objective and subjective considerations in each case in order to determine whether the Bankruptcy Code is being used properly and fairly and, consequently, whether "cause" exists to dismiss the case. *See In re Ripley & Hill, P.A.*, 176 B.R. 596, 598 (Bankr.M.D.Fla.1994); *cf. Matter of Love*, 957 F.2d 1350, 1355, 1357, 1359 (7th Cir.1992) (Chapter 13 dismissal for failure to file in good faith); *Leavitt v. Soto (In re Leavitt)*, 209 B.R. 935, 939–41 (9th Cir. BAP 1997), *affirmed*, 171 F.3d 1219 (9th Cir.1999). To make the requisite showing, the movant need not show, though it would be relevant, that the debtor had any sort of fraudulent or malicious intent or scheme in mind when filing; "malfeasance is not a prerequisite to bad faith." *Leavitt*, 209 B.R. at 940–41; *see also Matter of Love*, 957 F.2d 1350, 1360–61 (7th Cir.1992).

■■■ Corporate Chapter 7 cases, unlike almost any other type of bankruptcy case, have very limited purposes. They do not implicate the fresh-start considerations underlying nearly every other type of bankruptcy case, including individual Chapter 7 cases, and they do not demand

the reorganizational analysis that a Chapter 11 or 13 case would demand. *See In re Ripley & Hill, P.A.,* 176 B.R. 596, 598 (Bankr.M.D.Fla.1994). The only policy implicated is the fair and orderly liquidation of corporate assets to creditors, and a no-asset Chapter 7, of course, does not implicate this policy. *See id.* This case is not quite a no-asset case; ATC has a *de minimis* amount of office and telephone equipment, perhaps totaling $1000, and a chose in action in the form of an appeal from the dismissal of its antitrust counterclaims against its primary non-insider creditor. If it wins on appeal and succeeds in having the case remanded to the trial court, its primary creditor's claim for $173,000 could be exceeded by ATC's counterclaims for $5 million, which would be subject to trebling. Relying on *Koch Refining v. Farmers Union Central Exchange,* 831 F.2d 1339 (7th Cir.1987), ATC also asserts that the alter-ego action that Siemens was about to bring against the Glubisz brothers in state court is an asset of the bankruptcy estate and can only be brought by the case trustee. Under the unique circumstances present here, these two choses in action, however, end up not implicating the fair and orderly liquidation of corporate assets to creditors in any way except, perhaps, the most technical sense. An analysis of the best and worst case scenarios for ATC reveals why this is so.

### A. ATC's Best Case Scenario

On one hand, the appeal of the litigation involving Siemens in the 11th Circuit could go forward as planned while this bankruptcy case's automatic stay prevents enforcement of the $173,000 judgment against ATC; the judgment and dismissal of ATC's counterclaim could be reversed and remanded; ATC could ultimately be the holder of a claim for up to $15 million against Siemens by prevailing in the remanded trial; and ATC would owe Siemens nothing. In that situation, the bankruptcy estate would be the holder of the sole asset, the pot of money recovered, and the only creditors would be the two sole shareholders/principals (the Glubisz brothers) and the law firm entering into the contingency contract to recover the money and receive compensation therefrom. Technically speaking, the Chapter 7 forum could be used to distribute this pot of money (the only bankruptcy estate property) to these three creditors. Practically speaking, though, the time and resources of the Bankruptcy Court and the case trustee would not be expended justifiably, because the special Chapter 7 federal forum is hardly necessary for taking a pot of money belonging to a corporation and distributing it to the same corporation's two shareholders/principals (first as purported creditors and then as equity security holders, *see* 11 U.S.C. § 726(a)) and to the law firm responsible for recovering the same pot of money. In this scenario, the bankruptcy case has served merely as an inexpensive, substitute appeal bond staying enforcement of the $173,000 judgment against ATC and its only two shareholders/principals by means of an Illinois action to pierce a corporate veil.

The additional consideration of the alter-ego lawsuit against the debtor's principals as a bankruptcy-estate asset does not substantially change the best-case-scenario. According to *Koch Refining v. Farmers Union Central Exchange,* 831 F.2d 1339 (7th Cir.1987), the Illinois alter-ego action is available first to the Chapter 7 case trustee and then, upon abandonment, to any creditor who could have brought such suit in the absence of the bankruptcy case. *See id.* at 1345–47 & n. 9; *see also Aspling v. Ferrall,* 232 Ill.App.3d 758, 174 Ill.Dec. 9, 597 N.E.2d 1221, 1224–25 (1992). Although the *Koch* decision is not entirely clear in this regard, this Illinois cause of

action would have either accrued to the debtor corporation prepetition, in which case it would be property of the estate pursuant to § 541(a), and/or it would have accrued in favor of all creditors as a general creditor claim, in which case the trustee alone would have standing to initiate the alter-ego action pursuant to § 544(b)[1] (at least until abandonment) and then bring any avoided transfer of property to the Glubiszes into the estate pursuant to § 550(a) and § 541(a)(3).[2] *See id.* at 1345–46, 1348–50; *see also St. Paul Fire and Marine Ins. Co. v. PepsiCo*, 884 F.2d 688, 700–02 (2nd Cir.1989); *Securities Investor Protection Corp. v. Stratton Oakmont*, 234 B.R. 293, 321–22 (Bankr.S.D.N.Y.1999) (trustee can choose to bring a state-law alter-ego claim under § 544(b) authority); *Harrison III v. Entertainment Equities (In re Rave Communications)*, 138 B.R. 390, 392 & n. 2 (Bankr.S.D.N.Y.1992) (same); *In re Zarling*, 70 B.R. 402, 407 (Bankr.E.D.Wis.1987) (same).

■ In this scenario, the trustee would not likely decide that the alter-ego action is worth bringing on behalf of the estate—a decision that is within the discretion of the case trustee, *see* Fed. R. Bankr.Pro. 6007, 6009; *Koch Refining*, 831 F.2d at 1346–47; *Aspling v. Ferrall*, 232 Ill.App.3d 758, 174 Ill.Dec. 9, 597 N.E.2d 1221, 1227

(1992)—because the predecessor action now pending in the state court would no longer be viable, the $173,000 liability upon which it is based being vacated on appeal in the 11th Circuit. Although much bankruptcy-law precedent, including *Koch*, appears to treat alter-ego suits as independent causes of action, such actions under various state laws, including Illinois law, are actually equitable *remedies* that can be used to satisfy a debtor corporation's liability on a different underlying cause of action. *See Peetoom v. Swanson*, 334 Ill. App.3d 523, 268 Ill.Dec. 305, 778 N.E.2d 291, 295–96 (2002), *appeal denied*, 202 Ill.2d 675, 272 Ill.Dec. 359, 787 N.E.2d 174 (2003); *see also Nat'l City Bank of Minneapolis v. Lapides (In re Transcolor Corp.)*, 296 B.R. 343, 355 (Bankr.D.Md.2003). Thus, an open question would be whether the trustee could still use Siemens' equitable remedy for the benefit of other creditors once its underlying cause of action is no longer viable. Even if such use is authorized under the broad language of the Seventh Circuit in *Koch*, some practical considerations remain. The Glubisz brothers would have no reason as creditors to pierce the corporate veil to collect debts from themselves, *cf. Koch Refining*, 831 F.2d at 1350, and the law firm prosecuting the appeal and the retrial would presumably collect under the contingency agree-

1. "Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title...." 11 U.S.C.A. § 544(b).

2. While Siemens is correct in asserting that the automatic stay in § 362(a) generally does not stay a creditor's lawsuit to collect from a nondebtor who is also liable on its claim against the debtor, Siemens does not recognize the second aspect of the automatic stay contained in § 362(a)(2)-(4). This second as-

pect of the automatic stay benefits creditors by protecting property of the bankruptcy estate, as opposed to purely protecting the debtor from the continuation, commencement, or enforcement of a lawsuit to obtain a money judgment. Because of the Seventh Circuit's interpretation of the Illinois alter-ego action in *Koch Refining*, such an action is protected by § 362(a)(2) and (a)(3) until the Chapter 7 case trustee decides to abandon the same under § 554(b)—even though the alter-ego action is technically not a lawsuit against the debtor corporation itself. *See, e.g., St. Paul Fire and Marine Ins. Co. v. PepsiCo*, 884 F.2d 688, 700–02, 706 (2nd Cir.1989).

ment out of the same money judgment awarded against Siemens. This law firm may have even asserted an attorney's lien on the proceeds of ATC's lawsuit in the appropriate state forum, just as a lawyer in Illinois is permitted to do to secure payment for services, fees, and expenses payable pursuant to a contingency contract. *See, e.g.,* 770 Ill. Comp. Stat. Ann. 5/1 (West 2000).

### B. ATC's Worst Case Scenario

On the other hand, the appeal of the litigation involving Siemens in the 11th Circuit could go forward as planned, with the trial court's judgment being affirmed. In this situation, Siemens would still hold its unsatisfied claim for $173,000 at the end of the day, the law firm's claim would be zero or very low because the contingency on which it is based (success on appeal) did not occur,[3] and the only other creditor claims against the debtor ATC would be those disputed claims that the Glubisz brothers hold for rent and salaries. The bankruptcy estate's sole asset, the chose in action against Siemens, would be depleted or worthless, and the case would be a no-asset case for all practical purposes. Thus, the case would not be a means for distributing assets ratably to creditors, and, unlike cases involving individual Chapter 7 debtors, *see* 11 U.S.C. § 727(a)(1), the debtor corporation's Chapter 7 case would not result in the discharge of personal liability for its debts.[4] *Cf. In re Carbaugh,* 299 B.R. 395, 398 (Bankr.

N.D.Tex.2003). The case would (once again) serve as an inexpensive appeal-bond substitute until affirmance by the 11th Circuit; it would similarly serve as an unfair litigation tactic for delaying Siemens' alter-ego claim against the Glubisz brothers, which was about to proceed to trial on the eve of this bankruptcy filing. *See In re Ripley & Hill, P.A.,* 176 B.R. 596, 598–99 (Bankr.M.D.Fla.1994); *cf. In re Marsch,* 36 F.3d 825, 828–29 (9th Cir.1994) (Chapter 11 case filed only as substitute for appeal bond); *Matter of Love,* 957 F.2d 1350, 1357–59 (7th Cir.1992) (affirming Chapter 13 dismissal for lack of good faith when debtor's motive was to avoid payment to a single primary creditor, the IRS, by filing petition shortly after creditor commenced garnishment); *Leavitt v. Soto (In re Leavitt),* 209 B.R. 935, 940 (9th Cir. BAP 1997) ("[B]ad faith exists where the debtor filed a petition only with the intention to defeat state court litigation. *In re Chinichian,* 784 F.2d 1440, 1445–46 (9th Cir.1986)."), *affirmed,* 171 F.3d 1219 (9th Cir.1999).

The fact that the alter-ego action against the Glubisz brothers could initially be brought on behalf of the estate by the trustee—either because this equitable remedy is the property of ATC under § 541(a) or qualifies as a general creditor's avoidance action under § 544(b)—once again does not alter the analysis in the second scenario. To the extent that the trustee brings the alter-ego claim in the

---

3. Contingent claims are sometimes *estimated* relatively early for purposes of allowance only if fixing the amount in a normal fashion would unduly delay the administration of the bankruptcy estate. 11 U.S.C. § 502(c). Because the only asset to be administered here is the same chose in action upon which the law firm's claim depends, waiting and seeing whether the contingency of the legal victory actually occurs would not delay estate administration.

4. Many individual no-asset Chapter 7 cases are filed in every bankruptcy court across the country with no apparent benefit to creditors. But, at least in those cases, the U.S. Bankruptcy Code furthers the fresh-start policy when the debtors receive a discharge of personal liability.

bankruptcy case and such claim fails on the merits, the case will still be a no-asset case with no liquidation dividends to be distributed and no discharge. To the extent that the trustee brings such claim and succeeds, the success could only be based on the conclusion that the corporate form of ATC is a nullity, *see, e.g., People v. V & M Industries*, 298 Ill.App.3d 733, 233 Ill. Dec. 218, 700 N.E.2d 746, 750–52 (1998), in which case the Glubisz brothers' claims against ATC for rent and salary would probably be unenforceable under nonbankruptcy law and disallowed pursuant to 11 U.S.C. § 502(b)(1) if collateral-estoppel or the law-of-the-case doctrine applies. The case trustee would then have to distribute the proceeds of the alter-ego action to Siemens to satisfy its $173,000 judgment claim. However, the federal bankruptcy forum and the actions of a Chapter 7 case trustee are not necessary or efficient for accomplishing this result in this particular bankruptcy case. The determination of whether the Glubisz brothers' personal assets should be distributed to satisfy Siemens' claim against ATC would likely have been done already in state court had this bankruptcy case not been filed; moreover, the case trustee would not have become embroiled in the trial tactics technicalities concerning a two-party dispute. This brings us right back to where we began: an unfair litigation tactic used to delay the alter-ego lawsuit against nondebtors in state court. *Cf. In re Ripley & Hill, P.A.*, 176 B.R. 596, 599 (Bankr.M.D.Fla.1994) (delay of the lawsuit against the corporate-shell debtor in state court).

### C. General Bankruptcy–Law Considerations in This Case

■ The Court is of the opinion that Chapter 7 of the Bankruptcy Code was never intended to serve merely as a litigation tool for two sole shareholders holding onto a corporate shell that has not conducted any business activity for two years. It also believes that this bankruptcy case does not adequately implicate any of the policies that the U.S. Bankruptcy Code was enacted to serve. A major consideration that has led other courts to conclude that a Chapter 7 case should be dismissed is the fact that the case is primarily a tool for thwarting the collection efforts of a single creditor holding a disputed money judgment. *See In re Zick*, 931 F.2d 1124, 1128 (6th Cir.1991); *In re Huckfeldt*, 39 F.3d 829, 832–33 (8th Cir.1994); *In re Collins*, 250 B.R. 645, 654–55 (Bankr. N.D.Ill.2000); *In re Stump*, 280 B.R. 208, 214 & nn. 1 & 2 (Bankr.S.D.Ohio 2002); *cf. Matter of Little Creek Development Co.*, 779 F.2d 1068, 1070–71, 1073 (5th Cir.1986) (identifying recurring bad-faith patterns, such as when "the debtor and one creditor [proceed] to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford"); *In re Carbaugh*, 299 B.R. 395, 399 (Bankr.N.D.Tex.2003). In this circumstance, a bankruptcy debtor is entitled to receive the benefits the automatic stay has on collateral litigation, but the receipt of those benefits cannot be the only reason for filing the bankruptcy petition. *See In re Marsch*, 36 F.3d 825, 828–29 (9th Cir.1994). In this case, two different matters have been stayed as a result of the automatic stay and the state-court judge's independent cautionary stay: (1) the citation-to-discover-assets proceeding stemming from Siemens' registration of its $173,000 foreign money judgment in Cook County and (2) the alter-ego action to collect the same amount from ATC's two principals. The two matters are inextricably linked, as recognized by the state-court judge who consolidated them for purposes of judicial economy. Due to the inextricable link, the Court sees no reason why this case's replacement of an appeal bond in

two different civil actions should count any more than it does in those cases in which an appeal-bond substitute in a single matter is an insufficient justification for the bankruptcy case. Also, the fact that the state-court judge, without seeing a proper appeal bond, twice denied a motion to stay the consolidated Cook County action before ATC filed this bankruptcy petition on the eve of the nondebtors' trial is overwhelming evidence of ATC's primary motivation for filing, especially in light of ATC's two-year opportunity to file this same case after ceasing operations.

ATC would have this Court conclude that a proper purpose for this case is preservation of the estate property, the dismissed chose in action pending on appeal, so that the same could potentially be distributed ratably to creditors (assuming the action succeeds at both levels). This more traditional analysis and rationale for bankruptcy relief does not work as well when the debtor does not hold any tangible property, and the only intangible property it does hold is something as unique as a dismissed counterclaim against the primary noninsider creditor. In that circumstance, the use of § 362(a) is potentially subject to manipulation in favor of the debtor's insiders without any corresponding benefit to noninsider creditors. ATC makes the argument that this Chapter 7 filing is nevertheless appropriate, because under Illinois law, 735 Ill. Comp. Stat. Ann. 5/2–1402(c)(5) (West 2000), Siemens' motion for turnover in its asset-discovery proceeding against ATC could result in Siemens' ownership of its only asset—its "chose in action" pending as a dismissed antitrust counterclaim against Siemens in the 11th Circuit Court of Appeals. If the turnover actually occurred, Siemens would effectively own the cause of action against itself and would then proceed to dismiss the appeal and render the dismissal of ATC's antitrust claim final and unassaila-

ble. While ATC's concern is not without merit, this Court notes that under Illinois law, a trial court judge has discretion to deny turnover of choses in action when such turnover order might produce troublesome situations. See *Gonzalez v. Profile Sanding Equipment*, 333 Ill.App.3d 680, 267 Ill.Dec. 295, 776 N.E.2d 667, 677–681 (2002) (concluding that the lower court did not abuse its discretion in denying turnover of a legal-malpractice claim in part because of the effect that a third party's prosecution of such action would have on the attorney-client privilege). ATC's concern could and should be addressed to the Illinois courts. It does not present any additional reason why this Chapter 7 case implicates any true bankruptcy-law policies.

Finally, the opinion in *In re Ripley & Hill, P.A.*, 176 B.R. 596 (Bankr.M.D.Fla. 1994), supports the overall analysis done in this case. In *Ripley*, the debtor was a professional law association composed of two shareholders—both professional law associations—which were no longer operating the debtor's separate venture. See *id.* at 597. Each of the principals maintained separate practices, and, like the debtor here, the debtor in *Ripley* ran its operations from a location owned or controlled by one of the principals. Moreover, the debtor had only one creditor who was not an insider, and by the time the Chapter 7 case was filed, it was a no-asset case after the two principals had already funneled any existing funds through to themselves. See *id.* at 597. The single non-insider creditor had a state-court contract suit pending against the debtor when the debtor filed the case, and this creditor alleged that the case was merely a manipulation of the Bankruptcy Code to frustrate collection of a single judgment from a debtor that was not properly capitalized in the first place. See *id.* Concluding that

the dispute presented no bankruptcy-law concerns and would be more properly presented for resolution in state court, the U.S. Bankruptcy Court in Middle District of Florida dismissed the Chapter 7 case for "cause." *See id.* at 598–99.

In this case, too, "cause" for dismissal is established because the dispute presents no legitimate reason consistent with the U.S. Bankruptcy Code for being conducted in the form of a Chapter 7 liquidation case. Therefore, the Court finds that "cause" for dismissal with prejudice exists pursuant to 11 U.S.C. § 707(a) and § 349(a).

### ORDER

1. Case 03 B 46296 is dismissed with prejudice for "cause" pursuant to 11 U.S.C. § 707(a) and § 349(a).

2. Siemens' alternative request to modify the automatic stay is denied as moot.